UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| **SHERRIE L. HILL,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. V-12-11 |
| | § | |
| **WELLS FARGO BANK, N.A.,** | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the Court is Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") Motion to Dismiss (Dkt. No. 5). Wells Fargo's motion is ripe for ruling and deemed unopposed because the submission date has passed and Plaintiff Sherrie L. Hill ("Hill") has not filed a response.[1] Having carefully considered the motion, record, and applicable law, the Court is of the opinion that Wells Fargo's motion should be **GRANTED**.

**I. Background**

According to the facts as set forth in Hill's Original Petition and Application for Temporary Restraining Order and Temporary Injunctive Relief ("Petition"), Hill purchased the property located at 1001 Halsey Street in Victoria, Texas (the "Property") on April 5, 2005. (Pet., Dkt. No. 1, Ex. D-1, ¶ 5.) To finance her purchase of the Property, Hill executed a promissory note (the "Note") and deed of trust ("Deed of Trust") in favor of Wells Fargo. (*Id.*) Hill's mortgage loan was insured by the Federal Housing Authority (FHA). (*Id.*)

---

1. *See* S.D. TEX. LOCAL RULES 7.3, 7.4 (providing that opposed motions will be submitted to the judge for ruling 21 days from filing, responses must be filed by the submission date, and failure to respond will be taken as a representation of no opposition). The deadline for Hill's response was March 16, 2012. To date, Hill has not responded to Wells Fargo's Motion to Dismiss.

Hill began having difficulty making the payments on the Note beginning in October 2010.[2] (Pet. ¶ 6.) Hill contacted Wells Fargo to explore workout options, but she did not have an in-person meeting with any Wells Fargo representatives, nor did she discuss any loss mitigation or workout options with them. (*Id.*) On March 3, 2011, Hill received a notice of default from Wells Fargo's attorneys stating that she needed to pay $3,931.68 to avoid foreclosure and had 30 days to respond. (*Id.*) On March 11, 2011, Hill received another letter from Wells Fargo's attorneys stating that Wells Fargo would be foreclosing on her home on April 5, 2011. (*Id.*)

On March 22, 2011, Hill contacted Wells Fargo's attorneys regarding workout options. (Pet. ¶ 7.) Hill informed the representative with whom she spoke that she wanted to keep her home and had $4,000 immediately available to cure the arrearages and late fees. (*Id.*) Hill then contacted Wells Fargo directly, but it refused to accept curative payment. (Pet. ¶ 8.) Instead, Hill was instructed to send a hardship letter, loan modification application, and all of her financial information to Wells Fargo, which she did on March 25, 2011. (*Id.*)

On April 1, 2011, Hill received a letter from Wells Fargo's attorneys stating that the foreclosure sale had been rescheduled for May 3, 2011. (Pet. ¶ 9.) Hill contacted Wells Fargo on April 12, 2011 and was told that her application for loan modification was denied. (*Id.*) Hill was also told that she would have to pay Wells Fargo $4,728.40 plus its attorney's fees. (*Id.*) Hill continued to contact Wells Fargo and its attorneys in an attempt to cure the arrearages, but neither Wells Fargo nor its attorneys could accept payment. (Pet. ¶ 10.) On May 3, 2011, Hill's home was sold at a foreclosure sale. (*Id.*) Hill was then sued by Wells Fargo for forcible entry and detainer seeking possession of the Property. (*Id.*)

---

2. Hill's Petition actually alleges that she had difficulty making payments starting in October 2011; however, based on Hill's allegations of events that followed in March and April 2011, the Court assumes this was a typo.

On January 26, 2012, Hill filed suit against Wells Fargo in Texas State Court asserting causes of action for breach of contract and violations of the Real Estate Settlement Procedures Act, Texas Debt Collections Act, and Texas Property Code. Hill also seeks a declaratory judgment effectively rescinding the foreclosure, a temporary and permanent injunction, actual damages, statutory damages, exemplary damages, costs, and attorney's fees.

Wells Fargo subsequently removed this action to federal court and now moves to dismiss all of Hill's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to dismiss an action for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). When considering a Rule 12(b)(6) motion, a court must accept the plaintiff's allegations as true and draw all reasonable inferences in her favor. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *United States v. Gaubert*, 499 U.S. 315, 327 (1991). A court may not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (citing *St. Paul Ins. Co. of Bellaire, Texas v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991)).

Dismissal can be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *See Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 737—38 (S.D. Tex. 1998). While a complaint need not contain detailed factual allegations to survive a 12(b)(6) motion, the Supreme Court has held that a plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and

n/a
n/a

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (abrogating the *Conley v. Gibson*, 355 U.S. 41 (1957) 'no set of facts' standard as "an incomplete, negative gloss on an accepted pleading standard") (citations omitted). Hill must allege "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Id.*; *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 140 (5th Cir. 2007).

### III. Analysis

#### A. Violations of the Texas Debt Collection Act

The Texas Debt Collection Act (TDCA), TEX. FIN. CODE §§ 392.001 *et al.*, provides a state law cause of action for wrongful debt collection. *See generally Cushman v. GC Servs., LP*, 657 F. Supp. 2d 834, 840 (S.D. Tex. 2009). It governs collections of "consumer debts" by "debt collectors" and specifically forbids debt collectors from, among other things, making a "fraudulent, deceptive, or misleading representation" that employs certain listed practices. TEX. FIN. CODE §§ 392.001 & 392.304(a).[3] In order to state a claim under the TDCA, a plaintiff must

---

3. Specifically, debt collectors are prohibited from:

   (1) using a name other than the:
      (A) true business or professional name or the true personal or legal name of the debt collector while engaged in debt collection; or
      (B) name appearing on the face of the credit card while engaged in the collection of a credit card debt;
   (2) failing to maintain a list of all business or professional names known to be used or formerly used by persons collecting consumer debts or attempting to collect consumer debts for the debt collector;
   (3) representing falsely that the debt collector has information or something of value for the consumer in order to solicit or discover information about the consumer;
   (4) failing to disclose clearly in any communication with the debtor the name of the person to whom the debt has been assigned or is owed when making a demand for money;
   (5) in the case of a third-party debt collector, failing to disclose, except in a formal pleading made in connection with a legal action:
      (A) that the communication is an attempt to collect a debt and that any information obtained will be used for that purpose, if the communication is the initial written or oral communication between the third-party debt collector and the debtor; or
      (B) that the communication is from a debt collector, if the communication is a subsequent written or oral communication between the third-party debt collector and the debtor;

set forth facts showing that: (1) the debt at issue is a consumer debt; (2) the defendant is a debt collector within the meaning of the TDCA; (3) the defendant committed a wrongful act in violation of the TDCA; (4) the wrongful act was committed against the plaintiff; and (5) the plaintiff was injured as result of the defendant's wrongful act. *See* TEX. FIN. CODE §§ 392.001–392.404.

Giving rise to her claim under the TDCA, Hill alleges that she is a "consumer" as defined in TEX. FIN. CODE § 392.001(1), Wells Fargo is a "debt collector" as defined in TEX. FIN. CODE § 392.001(6), and Wells Fargo has attempted to collect a "debt" as defined in TEX. FIN. CODE § 392.001(2). (Pet. ¶16.) Hill further alleges that Wells Fargo violated TEX. FIN. CODE §

---

(6) using a written communication that fails to indicate clearly the name of the debt collector and the debt collector's street address or post office box and telephone number if the written notice refers to a delinquent consumer debt;
(7) using a written communication that demands a response to a place other than the debt collector's or creditor's street address or post office box;
(8) misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding;
(9) representing falsely that a debt collector is vouched for, bonded by, or affiliated with, or is an instrumentality, agent, or official of, this state or an agency of federal, state, or local government;
(10) using, distributing, or selling a written communication that simulates or is represented falsely to be a document authorized, issued, or approved by a court, an official, a governmental agency, or any other governmental authority or that creates a false impression about the communication's source, authorization, or approval;
(11) using a seal, insignia, or design that simulates that of a governmental agency;
(12) representing that a consumer debt may be increased by the addition of attorney's fees, investigation fees, service fees, or other charges if a written contract or statute does not authorize the additional fees or charges;
(13) representing that a consumer debt will definitely be increased by the addition of attorney's fees, investigation fees, service fees, or other charges if the award of the fees or charges is subject to judicial discretion;
(14) representing falsely the status or nature of the services rendered by the debt collector or the debt collector's business;
(15) using a written communication that violates the United States postal laws and regulations;
(16) using a communication that purports to be from an attorney or law firm if it is not;
(17) representing that a consumer debt is being collected by an attorney if it is not;
(18) representing that a consumer debt is being collected by an independent, bona fide organization engaged in the business of collecting past due accounts when the debt is being collected by a subterfuge organization under the control and direction of the person who is owed the debt; or
(19) using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer.

TEX. FIN. CODE § 392.304(a).

392.001(19) by "refus[ing] to provide information to [her] about [the] total amount needed to cure the arrears on her loan after reasonable requests from [Hill]." (Pet. ¶17.) Wells Fargo also "refused to accept a payment in order for [Hill] to cure the arrearage, and stated that she must apply for a loan modification instead." (*Id.*) Hill alleges that she "was injured as a result of Defendant Wells Fargo's wrongful acts." (Pet. ¶ 18.)

Wells Fargo moves to dismiss Hill's claim under the TDCA on the grounds that Hill fails to allege any facts showing that Wells Fargo made any false representation or used any deceptive means to collect a debt, which is necessary to state a viable claim under the TDCA. The Court agrees. "In order to constitute a misrepresentation" under the TDCA, Wells Fargo "must have made a false or misleading assertion." *See Reynolds v. Sw. Bell Tel., L.P.*, 2006 WL 1791606, at *7 (Tex. App.—Fort Worth June 29, 2006, pet. denied). With respect to the amount due under the Note, Hill does not allege that Wells Fargo made any assertion at all, but instead claims that it remained silent. As for the one statement Wells Fargo allegedly made—that Hill needed to apply for a loan modification—Hill has not alleged that the statement was false, misleading, or deceptive at the time it was communicated to her, or that Wells Fargo guaranteed her any loan modification.

The Court finds that Hill has failed to state a claim under the TDCA. Accordingly, Wells Fargo's motion to dismiss this claim is **GRANTED**, and Hill's claim under the TDCA is **DISMISSED**.

**B. Breach of Contract—Promissory Note and Deed of Trust**

To state a claim for breach of contract under Texas law, a plaintiff must allege facts showing: (1) the existence of a valid contract between the plaintiff and defendant; (2) that the plaintiff adequately performed or tendered performance of its own obligations; (3) the

defendant's breach of the contract; and (4) the plaintiff's damages as a result of the breach. *See James M. Clifton, Inc. v. Premillenium, Ltd.*, 229 S.W.3d 857, 859 (Tex. App.—Dallas 2007, no pet.); *see also Frost Nat'l Bank v. Burge*, 29 S.W.3d 580, 593 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

Giving rise to her breach of contract claim, Hill alleges that the Note and Deed of Trust she signed to secure the indebtedness on the Property constitute an enforceable contract. (Pet. ¶ 19.) Hill further alleges that, as an FHA-insured loan, the Deed of Trust states that compliance with U.S. Department of Housing and Urban Development (HUD) regulations is a precondition to foreclosure,[4] and HUD has made clear its intent that "no mortgagee shall commence foreclosure or acquire title to a property until the requirements of this subpart have been followed." (Pet. ¶¶ 19–20 (citing 24 CFR § 203.500).) Because Wells Fargo failed to undertake any of the loss mitigation efforts required by HUD, it did not meet a condition precedent to foreclosure. (*Id.*) Thus, Hill claims, Wells Fargo breached the terms of the Note and Deed of Trust by accelerating the Note and invoking the power of sale included in the Deed of Trust without performing its own obligations under the Deed of Trust. (Pet. ¶ 21.) Hill further alleges that "such breach caused [her] injury." (*Id.*)

Wells Fargo moves to dismiss this claim because Hill admits that she defaulted on her mortgage loan before Wells Fargo initiated foreclosure proceedings. As such, Wells Fargo contends that Hill is precluded from bringing a breach of contract action for its alleged subsequent breach. The Court agrees.

---

4. Specifically, Paragraph 9 of the Deed of Trust provides that "[i]n many circumstances regulations issued by the Secretary [of Housing and Urban Development] will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulation of the Secretary."

The Fifth Circuit has held that "neither the Federal Housing Act nor the HUD regulation was intended directly to benefit . . . owners of low income housing . . . ." *Moses v. Banco Mortgage Co.*, 778 F.2d 267, 271 (5th Cir. 1985). *See also Mitchell v. Chase Home Fin. LLC*, 2008 WL 623395, at *3 (N.D. Tex. March 4, 2008) ("As other courts have observed, the regulations promulgated under the National Housing Act govern relations between the mortgagee and the government, and give the mortgagor no claim for duty owed or for the mortgagee's failure to follow said regulations.") (citing *Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 360-61 (5th Cir. 1977); *In re Miller*, 124 F. App'x 152, 155 (4th Cir. 2005); *Leggette v. Wash. Mut. Bank, FA*, 2005 WL 2679699, at *5 (N.D. Tex. Oct. 19, 2005); *Baker v. Northland Mortgage Co.*, 344 F. Supp. 1385 (N.D. Ill. 1972)). However, "[a]n exception has been recognized where the HUD regulations are incorporated into a contract between mortgagee and the government so that it permits a basis for a breach of contract claim." *Motten v. Chase Home Finance*, — F. Supp. 2d —, 2011 WL 2566092, *10 (S.D. Tex. June 28, 2011) (citing *Baker v. Countrywide Home Loans, Inc.*, 2009 WL 1810336, *5 (N.D. Tex. June 24, 2009) (A "failure to comply with regulations made part of the parties' agreement may give rise to liability on a contract theory because the parties incorporated the terms into their contract. Indeed, courts have recognized that claims for failure to comply with HUD regulations . . . are best classified as a breach of contract.").

The court in *Baker v. Countrywide Home Loans, Inc.* allowed plaintiff mortgagors to proceed with a breach of contract claim based on the defendant mortgagee's alleged failure to comply with HUD regulations incorporated by reference into the note and deed of trust prior to accelerating the note. *Baker*, 2009 WL 1810336, at *5. Essential to the court's holding, however, was the fact that the plaintiffs had presented evidence that they had not defaulted on their loan. In

distinguishing *Mitchell v. Chase Home Finance*, 2008 WL 623395,—which rejected a similar attempt to enforce HUD regulations via a breach of contract claim—the *Baker* court explained:

> In *Mitchell,* the court first disposed of the plaintiffs' wrongful foreclosure claim, finding violations of HUD regulations promulgated pursuant to the National Housing Act cannot supply the grounds for a claim of wrongful foreclosure. The court proceeded to dispose of the plaintiffs' breach of contract claim. In so doing, the court noted that the plaintiffs admitted they defaulted on their mortgage loan before the defendants initiated foreclosure proceedings. Because the plaintiffs breached their agreement by defaulting first, they could not bring an action for the defendants' subsequent alleged breach.

*Baker*, 2009 WL 1810336, at *5 (internal citations omitted).

Here, like the plaintiff in *Mitchell*, Hill admits that she defaulted on her mortgage loan before Wells Fargo initiated foreclosure proceedings by alleging that she "began to experience financial hardship, which made it difficult to pay her mortgage on time." (Pet. ¶ 6.) Because Hill admits that she failed to perform her own obligations under the Note and Deed of Trust, she is precluded from bringing a breach of contract action for Wells Fargo's subsequent alleged failure to comply with HUD regulations prior to accelerating the Note.

The Court finds that Hill has failed to state a claim for breach of contract. Accordingly, Wells Fargo's motion to dismiss this claim is **GRANTED**, Hill's breach of contract claim is **DISMISSED**.

### C. Violation of the Real Estate Settlement Procedures Act

The federal Real Estate Settlement Procedures Act (RESPA) requires that "[i]f any servicer[5] of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days . . . unless the action requested is taken within such period." 12 U.S.C. § 2605(e)(1)(A).

---

5. "Servicer" is defined in the statute as "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)." 12 U.S.C. § 2605(i)(2).

9

Within 60 days of receiving a "qualified written request" (QWR), a loan servicer must (a) make appropriate corrections in borrower's account; (b) provide the borrower with a written explanation of why the account is correct and who the borrower may contact for further assistance; or (c) provide the borrower with the information requested, or a written explanation of why the information is unavailable or cannot be obtained by the servicer and who the borrower may contact for further assistance. *Id.* § 2605(e)(1)(B). RESPA defines a QWR as follows:

> [A] written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—
>
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).

To state a claim for relief under 12 U.S.C. § 2605(e), a plaintiff must allege facts showing that: (1) the defendant is a loan servicer under RESPA; (2) the plaintiff sent correspondence meeting the requirements of a QWR to the defendant; (3) the defendant failed to respond to the QWR in a timely manner; and (4) the defendant's failure to respond to the QWR caused actual damages. *Castrillo v. American Home Mortg. Servicing, Inc.*, 2010 WL 1424398, at *7–8 (E.D. La. Apr. 5, 2010) ("A RESPA plaintiff ordinarily must plead and prove actual damages because in most cases only actual damages are recoverable under RESPA"); *Fitch v. Wells Fargo Bank, N.A.*, 423 B.R. 630, 643 (E.D. La. 2010) ("A number of courts have held that a plaintiff must plead and prove actual damages as an element of a RESPA claim.").

Here, Hill alleges that Wells Fargo is a "servicer" of a federally regulated mortgage loan within the meaning of RESPA. (Pet. ¶ 23.) Hill further alleges that she sent Wells Fargo "written applications for a loan modification, including a hardship affidavit, and written submissions of financial information that were 'qualified written requests' within the meaning of RESPA, in that [Hill] sought information about [her] eligibility for a loan modification or other options to save [her] home." (Pet. ¶ 24.) However, "Wells Fargo failed to respond in a proper and timely way" to Hill's QWR "by failing to provide [Hill] with the information requested or explain why the information was unavailable, in violation of 12 U.S.C. § 2605(e)." (Pet. ¶ 25.)

Wells Fargo moves to dismiss Hill's claim under 12 U.S.C. § 2605(e) on the grounds that Hill's written applications for loan modification, hardship affidavit, and written submissions of financial information are not QWRs and therefore did not require a written response. Wells Fargo further argues that even if Hill's correspondences were QWRs, her RESPA claim still fails because it is completely devoid of any allegation that Wells Fargo's alleged failure to respond caused her any damages. The Court agrees.

The Eastern District of Texas has explicitly held that a written application for a loan modification does not constitute a QWR under RESPA, explaining:

> A QWR is a vehicle by which a customer can request information about the servicing of a loan. Taking Plaintiff's allegations as true and otherwise drawing all inferences in favor of her, Plaintiff has alleged, at best, that she wrote to Defendant to request a loan modification. A loan modification request does not dispute or request information about how a loan is being serviced. Therefore, Plaintiff's written communications did not constitute a QWR and did not implicate the statutory deadlines for responses.

*Shatteen v. JPMorgan Chase Bank, Nat. Ass'n*, 2010 WL 4342073, at *8 (E.D. Tex. Sept. 10, 2010), *adopted in full by* 2010 WL 4342082 (E.D. Tex. Nov. 2, 2010); *see also Sheikholeslami v. BAC Home Loans Servicing, L.P.*, 2012 WL 669932, *3 (E.D. Tex. Jan. 31, 2012) ("Plaintiffs

provide no authority that a written application for a loan modification is a QWR. Therefore, this claim should be dismissed.") Because Hill's "written applications for a loan modification, including a hardship affidavit, and written submissions of financial information" did not dispute or seek information from Wells Fargo about how her loan was being serviced, these correspondences do not constitute QWRs under RESPA. Even if they did, Hill's RESPA claim would still fail because her Petition contains no allegation that Wells Fargo's failure to respond to these correspondences damaged her, as required to state a claim under this statute. *See Akintunji v. Chase Home Finance, L.L.C.*, 2011 WL 2470709, *2–3 (S.D. Tex. Jun. 20, 2011) (dismissing RESPA claim against defendant where plaintiff failed to allege actual damages).

The Court finds that Hill has failed to state a claim for relief under RESPA. Accordingly, Wells Fargo's motion to dismiss this claim is **GRANTED**, and Hill's RESPA claim is **DISMISSED**.

### D. Violation of Texas Property Code § 51.002(d)

Texas Property Code § 51.002(d) provides:

> Notwithstanding any agreement to the contrary, the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b). The entire calendar day on which the notice required by this subsection is given, regardless of the time of day at which the notice is given, is included in computing the 20-day notice period required by this subsection, and the entire calendar day on which notice of sale is given under Subsection (b) is excluded in computing the 20-day notice period.

TEX. PROP. CODE § 51.002(d).

Giving rise to her claim under § 51.002(d), Hill alleges that she received notice of default from Wells Fargo on March 3, 2011. (Pet. ¶ 26.) The cure amount as stated on the letter was $3,931.68, and pursuant to § 51.002(d), she had 20 days to cure the default. (*Id.*) Hill contacted

Wells Fargo on March 22, 2011 and told its representative that she was ready, willing, and able to make the full payment, but Wells Fargo refused. (*Id.*) As a result of Wells Fargo's violation of § 51.002(d), Hill claims that she "has sustained damages." (*Id.*)

Wells Fargo moves to dismiss this claim on the grounds that § 51.002(d) does not provide for a private right of action. Wells Fargo does not cite any authority for this proposition, and Hill has not responded to Wells Fargo's motion in order to offer any authority in support of her § 51.002(d) claim. The Court is also unable to locate any Texas precedent explicitly recognizing or rejecting a right to recovery against a mortgagee based solely on a violation of § 51.002(d).

The Northern District of Texas recently recognized that the *trustee's* duty "is breached when the trustee fails to comply strictly with the terms of the deed of trust or the notice and sale provisions of § 51.002 of the Texas Property Code." *Marsh v. Wells Fargo Bank, N.A.*, 760 F. Supp. 2d 701, 708 (N. D. Tex. 2011) (citing *Clauer v. Heritage Lakes Homeowners Ass'n*, 726 F. Supp. 2d 668, 673 (E. D. Tex. 2010)). However, "[b]reach of the trustee's duty under a deed of trust is not itself an independent tort," but instead "may be stated under Texas law *as a claim for wrongful foreclosure.*" *Marsh*, 760 F. Supp. 2d at 708 (citing *Allied Capital Corp. v. Cravens*, 67 S.W.3d 486, 491–92 (Tex. App.—Corpus Christi 2002, no pet.); *Pou v. Brown & Shapiro*, 1997 WL 102470, *2 (N.D. Tex. Feb. 27, 1997)) (emphasis in *Marsh*). Likewise, the Southern District of Texas has recognized a cause of action for wrongful foreclosure against a mortgagee based on the mortgagee's failure to give required notices under § 51.002. *See, e.g.*, *Bittinger v. Wells Fargo Bank NA*, 2011 WL 3568206, *4 (S.D. Tex. Aug. 15, 2011). Thus, in an abundance of caution, the Court will construe Hill's claim under § 51.002(d) as one for wrongful foreclosure.

In Texas, to state a claim for wrongful foreclosure, a plaintiff must set forth facts showing: "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price;

13

and (3) a causal connection between the defect and the grossly inadequate selling price." *Sauceda v. GMAC Mortgage Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008); *see also Sotelo v. Interstate Financial Corp.*, 224 S.W.3d 517, 523 (Tex. App.—El Paso 2007) ("The elements of wrongful foreclosure are (1) an irregularity at the sale; and (2) the irregularity contributed to an inadequate price."). A party seeking a remedy for wrongful foreclosure must also show that it suffered harm. *Clark v. F.D.I.C.*, — F. Supp. 2d —, 2011 WL 2709062, *6 (S.D. Tex. Jul. 6, 2011).

Although Hill alleges that there was an irregularity in the foreclosure proceedings in that Wells Fargo did not allow her 20 days to cure her default as required under § 51.002(d), Hill has not alleged that the Property was sold at an inadequate price. Hill also admits that she is still in possession of the Property. (Pet. ¶ 14.) Here, as in *Baker,*

> It is undisputed that even though [Wells Fargo] commenced foreclosure proceedings, [Hill] never lost possession of [her] homestead. To the contrary, since the inception of this action, [Hill has] continued to enjoy possession of [her] property without making [her] monthly payments. As [Hill] never lost possession of [her] homestead, [she] seek damages for an attempted wrongful foreclosure— an action not recognized in Texas.

*Baker v. Countrywide*, 2009 WL 1810336 at *4. Under a wrongful foreclosure claim for damages, "recovery is premised upon one's lack of possession of real property;" therefore "individuals never losing possession of the property cannot recover [damages] on a theory of wrongful foreclosure." *Id.* (citing *Peterson v. Black*, 980 S.W.2d 818, 823 (Tex. App.—San Antonio 1998, no pet.)). Thus, even if Wells Fargo did violate § 51.002(d) and prematurely foreclosed on Hill's home, Hill has not alleged that she is entitled to damages for this conduct.

The Court finds that Hill has failed to state a claim under § 51.002(d). Accordingly, Wells Fargo's motion to dismiss this claim is **GRANTED**, and Hill's claim for violation of Texas Property Code § 51.002(d) is **DISMISSED**.

### E. Declaratory Judgment

The federal Declaratory Judgment Act (DJA) provides that "[i]n a case of actual controversy within its jurisdiction . . . [with exceptions not relevant here], any court of the United States, upon the filing of an appropriate pleading, may declare the rights . . . of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201(a). The DJA does not create an independent source of federal jurisdiction, but merely provides a remedy if there is, in fact, a judicially remediable right. *Schilling v. Rogers*, 363 U.S. 666, 677 (1960).

Hill alleges that "[she] is entitled to a declaratory judgment against Wells Fargo, declaring the foreclosure sale void or voiding the sale as a result of Wells Fargo's lack of authority to conduct a foreclosure sale regarding the Property . . . ." (Pet. ¶ 27.) Wells Fargo moves to dismiss Hill's request for a declaratory judgment on the grounds that because Hill does not allege that she has tendered, or is willing to tender, the full amount due on the Note, she is not entitled to rescind the foreclosure sale. The Court agrees.

The Court recognizes that "[s]everal Texas courts have held that where a bank did not strictly comply with the notice requirements of TEX. PROP CODE § 51.002, as is alleged to be the case here, the resulting foreclosure sale may be void." *Fraley v. BAC Home Loans Servicing, LP*, 2012 WL 779130, *9 (N.D. Tex. Jan. 10, 2012) (citing *Lido Intern., Inc. v. Lambeth*, 611 S.W.2d 622, 624 (Tex.1981); *Shearer v. Allied Live Oak Bank*, 758 S.W.2d 940, 942 (Tex. App.—Corpus Christi 1988); *Mitchell v. Texas Commerce Bank–Irving*, 680 S.W.2d 681, 682 (Tex. App.—Fort Worth 1984)). However, in order to be entitled to have a foreclosure sale set aside in Texas, a plaintiff must actually tender—not just offer to tender—the full amount owed on the note. *Lambert v. First Nat. Bank of Bowie*, 993 S.W.2d 833, 835–36 (Tex. App.—Ft. Worth 1999, pet. denied) (dismissing plaintiff's claim for rescission where plaintiff "offered to tender

'all amounts due and owing' under the note and deed of trust" because "he never tendered these amounts to the court"); *see also Fillion v. David Silvers Co.*, 709 S.W.2d 240, 246 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); ("Tender of whatever sum is owed on the mortgage debt is a condition precedent to the mortgagor's recovery of title from a mortgagee who is in possession and claims title under a void foreclosure sale.").

Much like Hill, the plaintiff in *Falk v. Wells Fargo Bank*, 2011 WL 3702666 (N.D. Tex. Aug. 19, 2011), also requested a declaratory judgment seeking cancellation and rescission of the foreclosure sale. Citing *Lambert*, 993 S.W.2d 833, and *Fillion*, 709 S.W.2d 240, the *Falk* court recognized that "[f]or a foreclosure sale to be set aside or cancelled, the mortgagor must tender the amounts due and owing under the note and deed of trust." *Falk*, 2011 WL 3702666, at *7. The court then "decline[d] to reverse the effect of the foreclosure sale" because the plaintiff "admit[ted] that he failed to timely make his mortgage payments, and remain[ed] unable to tender the amount necessary to rescind the sale." *Id.*

Here, although Hill alleges that she "told the representative that . . . she had $4,000.00 immediately available to cure the arrearages and late fees" (Pet. ¶ 7) and "continued to contact the Wells Fargo [*sic*] and its attorneys in an attempt to cure the arrearages" (Pet ¶ 10), Hill does not allege that she actually tendered any amount to Wells Fargo either before or after the foreclosure, let alone the full amount due under the Note. Hill also does not allege that she is willing and able to tender the full amount due under the Note at this time. As such, Hill has not alleged that she is entitled to rescind the foreclosure sale.

The Court finds that Hill has not adequately alleged that she is entitled to relief under the DJA. Accordingly, Wells Fargo's motion to dismiss this claim is **GRANTED**, and Hill's request for a declaratory judgment is **DISMISSED**.

16

### F. Application for Temporary Restraining Order and Temporary Injunction

The Fifth Circuit has explained that "[a] temporary restraining order is a 'stay put,' equitable remedy that has as its essential purpose the preservation of the status quo while the merits of the cause are explored through litigation." *Foreman v. Dallas County, Tex.*, 193 F.3d 314, 323 (5th Cir. 1999). A TRO or preliminary injunction "is typically granted during the pendency of a lawsuit to prevent irreparable injury that may result before a final decision on the merits." *Shanks v. City of Dallas, Tex.*, 752 F.2d 1092, 1096 (5th Cir.1985). In order to obtain injunctive relief, a plaintiff must show: (1) a substantial likelihood of ultimate success on the merits; (2) an injunctive order is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm the injunctive order would inflict on the non-movant; and (4) the injunctive order would serve the public interest. *Women's Med. Ctr. v. Bell*, 248 F.3d 411, 418–20 (5th Cir. 2001).

Hill requests injunctive relief enjoining Wells Fargo and its agents from "[t]aking any action to evict Plaintiffs and all occupants from the Property, or to take possession of the Property." (Pet. ¶ 15, Prayer ¶¶ 4 & 5.) In support of this claim, Hill states that harm is imminent because Wells Fargo seeks to evict her as soon as a writ of possession can be executed. (*Id.*) Hill further alleges that the harm is irreparable and that she has no adequate remedy at law, as her home is special to her and therefore irreplaceable. (*Id.*) Finally, Hill alleges that the writ of possession will be executed and the Property sold long before a trial on the merits over the legitimacy of the foreclosure. (*Id.*)

Wells Fargo moves to dismiss Hill's claim for injunctive relief because she fails to state a claim for relief under any of the causes of action she has asserted. The Court agrees. "A request for injunctive relief, absent a cause of action supporting the entry of a judgment, is fatally

defective and does not state a claim." *See Spady v. America's Servicing Co.*, 2012 WL 1884115, *5 (S.D. Tex. May 21, 2012). Because Hill has not shown a substantial likelihood of ultimate success on the merits—or even stated a claim for relief—under any cause of action, her request for injunctive relief must fail.

The Court finds that Hill has not stated a claim for injunctive relief. Accordingly, Wells Fargo's motion to dismiss this claim is **GRANTED**, and Hill's Application for Temporary Restraining Order and Temporary Injunction is **DENIED.**

**IV. Conclusion**

For the foregoing reasons, Wells Fargo's Motion to Dismiss (Dkt. No. 5) is **GRANTED**. However, because the Court is of the opinion that Hill may be able to state a claim for relief against Wells Fargo, Hill is granted leave to amend her complaint no later than 30 days after entry of this Order, or this action will be dismissed.

It is so **ORDERED**.

**SIGNED** this 6th day of June, 2012.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE